## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA *ex rel*** | : | |
| **Dr. J. Thaddeus Beck, M.D., et al.,** | : | |
| | : | **5:15-CV-5275-TLB** |
| **Plaintiffs and Relators,** | : | |
| | : | |
| **vs.** | : | |
| **TruRadiation Partners Arkansas, LLC;** | : | |
| **Northpoint Radiation Center GP, LLC;** | : | |
| **Physicians Radiation Arkansas, LP;** | : | |
| **Pro Physicians Arkansas, P.A.;** | : | |
| **Kenneth E. Gardner, M.D.** | : | |
| | : | |
| **Defendants.** | : | |

### AMENDED COMPLAINT[1]

This is an action by *qui tam* Physician Relators Dr. J. Thaddeus Beck, Dr. Daniel S. Bradford, Dr. Gregory J. Oakhill, Dr. Stephen B. Rosenfield, Dr. Eric S. Schaefer, and Dr. Patrick M. Travis, in the name of the United States Government to recover damages and civil penalties arising from the false claims for payment submitted, and caused to be submitted, to the United States by the Defendants for expensive radiation oncology therapy.

---

[1] This Amended Complaint is filed pursuant to the Court's Memorandum Opinion and Order filed 10/5/2017 (Doc. No. 45).

## I. PARTIES

### A. Relators

1.      Relators are all physicians and residents of the State of Arkansas and the United States of America.  Relators bring this civil action for violations of 31 U.S.C. § 3729 *et seq*. for themselves and for the United States Government under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b)(1).

2.      Relator, Dr. J. Thaaddeus Beck, graduated from the University of Arkansas for Medical Sciences in Little Rock in 1985 with a doctor of medicine degree. Dr. Beck completed a residency in internal medicine at UAMS in June of 1988.  He continued to receive further specialized training with a fellowship in hematology/oncology at Duke University Medical School in Durham, North Carolina from 1988 to 1991.  He, along with Drs. Daniel Bradford and Malcolm Hayward, started the Highlands Oncology Group, PA practice in June of 1996.  Dr. Beck is board certified in internal medicine, medical oncology and hematology from the American Board of Internal Medicine.  In 2002, Dr. Beck was elected a Fellow of the American College of Physicians.

3.      Relator, Dr. Dr. Daniel S. Bradford, has been practicing as a medical oncologist in Northwest Arkansas for over 25 years. Dr. Bradford graduated from the University of Arkansas for Medical Sciences in 1983 with a doctor of medicine degree. There he completed a residency in internal medicine followed by a fellowship in hematology-oncology, which he completed in 1989.  Dr. Bradford began his practice at the Fayetteville Diagnostic Clinic in 1989 and served as a medical oncologist until June of 1996 when he, along with Drs. Joseph Thaddeus Beck and Malcolm L. Hayward, started Highlands Oncology Group, PA to give specialized care in medical oncology and

hematology to cancer patients in Northwest Arkansas. He has also been instrumental in the development of the Center for Chest Care, a multidisciplinary approach for patients with known or suspected cancer of the lung and chest.

4.     Relator, Dr. Gregory J. Oakhill, joined the physicians of Highlands Oncology Group, PA in July of 2000 after having completed an internship, residency, and fellowship from the Medical University of South Carolina at Charleston. Dr. Oakhill is board certified in internal medicine, and his specialty certifications are in medical oncology and hematology from the American Board of Internal Medicine. In 2000, Dr. Oakhill joined his partner, Dr. Daniel Bradford, and several local specialists in the recently formed Center for Chest Care of Northwest Arkansas that specializes in the multidisciplinary approach to treating thoracic malignancies incorporating state of the art clinical trials. Dr. Oakhill also maintains a strong interest in all types of hematology and oncology treatment and diagnosis.

5.     Relator, Dr. Stephan B. Rosenfeld, has been a practicing medical oncologist and hematologist with the Highlands Oncology Group, PA since July of 2002. After receiving his medical degree from the Chicago Medical School in 1996, Dr. Rosenfeld completed a three-year residency in internal medicine and a three- year fellowship in hematology, oncology, and blood and marrow transplantation from the University of Iowa Hospitals and Clinics in Iowa City. Dr. Rosenfeld is board certified in internal medicine, hematology, and medical oncology from the American Board of Internal Medicine. He is also a member of several professional societies such as the American Society of Hematology, American Society of Clinical Oncology, and the Arkansas Medical Society.

6.      Relator, Dr. Eric S. Schaefer, joined Highlands Oncology Group, PA in July of 2009 as a medical oncologist/hematologist to serve with the group in Northwest Arkansas. Dr. Schaefer is board certified in internal medicine, medical oncology and hematology from the American Board of Internal Medicine. He received his doctorate of medicine degree from the Medical College of Ohio. He completed his residency in internal medicine with a three-year fellowship in hematology/oncology from the Wake Forest University Baptist Medical Center in Winston-Salem, North Carolina, where he was honored as chief fellow for the academic year 2008-2009. He also has extensive clinical research experience. His professional organization memberships include the American Society of Clinical Oncology, American Society of Hematology, and the Arkansas Medical Society.

7.      Relator, Dr. Patrick M. Travis joined Highlands Oncology Group, PA not long after its formation. Having graduated from the University of Arkansas for Medical Sciences at Little Rock with a doctor of medicine degree in 1990, Dr. Travis completed a residency in internal medicine at the University Hospital, followed by two fellowships in hematology/oncology at University Hospital and the Arkansas Cancer Research Center in Little Rock from 1990-1996. He has also maintained an assistant professorship from the University of Arkansas for Medical Sciences since 1998. He is board certified in medical oncology from the American Board of Internal Medicine. From 1996 through 2005, he directed the Stem Cell Transplant Department at Highlands Oncology Group, PA and has extensive stem cell transplant experience. He is also a member of several national and local medical organizations like the Southwest Oncology Group, American

Medical Association, American Society of Clinical Oncology, and the International Society for Cellular Therapy.

### B. Defendants

8.     There are multiple corporate Defendants in this case.  The diagram below shows their relationship with regard to Physicians Radiation Arkansas, LP (d/b/a Landmark Cancer Center).

**Defendant Oncology Qui Tam Entity Flow Chart For Arkansas**



9. **Defendant TruRadiation Partners Arkansas, LLC:** TruRadiation Partners Arkansas LLC filed as a Domestic Limited Liability Company (LLC) in the State of Texas on Wednesday, July 20, 2011, and is approximately six years old, as recorded in documents filed with the Texas Secretary of State. TruMedical Admin is the Director and Manager of TruRadiation Partners Arkansas. David E. Dickey and Lisa Sooter are incorporators and organizers of TruRadiation Partners. TruRadiation Partners also does business under the fictitious names Landmark Cancer Center and Northpoint Radiation Center.  TruRadiation Partners entered into a partnership agreement with Physicians Radiation Arkansas, LP and Northpoint Radiation Center GP, LLC. Under the terms of the agreement, the Partnership intends to operate a radiation oncology center providing radiation oncology services for patients referred by physicians who hold a license to practice medicine in the state of Arkansas.  The radiation oncology suite in which the radiation oncology center operates is leased to Physicians Radiation Arkansas, LP ("Tenant") by TruRadiation Partners Arkansas, LLC ("Manager") an affiliate of Northpoint Radiation Center GP, LLC ("General Partner").  The radiation oncology center does business as Landmark Cancer Center at 2526 Pinnacle Hills Parkway, Rogers, Arkansas.

As the Manager of the lease, TruRadiation Partners Arkansas, LLC assumes Management Services, including day-to-day responsibilities such as conducting the business operations of the Center. TruRadiation Partners also agrees to provide all Billing and Collecting Services for the Tenant, Physicians Radiation Arkansas, LP. However, TruRadiation Partners has the sole discretion to subcontract for the provision of some or all of the Management Services and Billing and Collection Services.

In addition to handling Management and Billing Services for the Tenant, TruRadiation Partners has been appointed Physicians Radiation Arkansas, LP's attorney in fact. As Physicians Radiation Arkansas, LP's attorney in fact, TruRadiation Partners has full irrevocable power and authority to take any and all action and to execute any and all documents and instruments which the Manager at any time deems necessary or desirable to accomplish the purpose of the Partnership Agreement.

Additionally, effective on May 1st, 2012 TruRadiation Partners and Physicians Radiation Arkansas, LP entered into a Business Associate Agreement whereby TruRadiation Partners was deemed the "Business Associate" and Physicians Radiation Arkansas a "Covered Entity." Under the Business Associate Agreement, the Business Associate and the Covered Entity are engaged in a business relationship whereby the Business Associate sells or provides certain services to the Covered Entity. Also, as a part of this business relationship the Business Associate performs or assists in performing a function or activity on behalf of the Covered Entity that involves the use or disclosure of Protected Health Information.

10.    **Defendant Northpoint Radiation Center GP, LLC:** Northpoint Radiation Center GP, LLC filed as a Domestic Limited Liability Company (LLC) in the State of Texas on Monday, April 10, 2006, and is approximately eleven years old, as recorded in documents filed with the Texas Secretary of State. Jon Tryggestad is the Director, Manager, and CEO of Northpoint Radiation Center. Northpoint Radiation Center is the General Partner of Physicians Radiation Arkansas, LP and Physicians Radiation Austin, LP. Northpoint Radiation Center is also listed as a fictitious name for TruRadiation

Partners Arkansas, LLC. Additionally, Northpoint Radiation is an old charter name of Landmark Cancer Centers.

Northpoint Radiation Center entered into a Limited Partnership Agreement with Physicians Radiation Arkansas, LP. Northpoint Radiation Center is the only General Partner and the limited partners are physicians.   Under the Limited Partnership Agreement, Northpoint Radiation Center has the right to adjust, arbitrate, compromise, sue or defend, abandon, or otherwise deal with and settle any and all claims in favor of against the Partnership. However, the Limited Partnership Agreement also has an indemnification provision whereby the Partnership agrees to indemnify Northpoint Radiation Center and its agents or employees relating to any liability or damage incurred or suffered by Northpoint Radiation Center or its agents, employees by reason of any act preformed or omitted to be performed (but not constituting willful misconduct or gross negligence) by Northpoint Radiation Center or its agents or employees in connection with the Partnership's business. Northpoint Radiation Center also holds itself out as the attorney-in-fact of each limited partner.

According to multiple documents filed with the Texas Secretary of State, Northpoint Radiation Center GP, LLC is the general partner of the following entities:

Physicians Radiation FW LP

Physicians Radiation Network LP

Physicians Radiation San Antonio LP

Physicians Radiation Arkansas LP

Physicians Radiation Austin LP.

11.     **Defendant Physicians Radiation Arkansas, LP:**  Physicians Radiation Arkansas, LP filed as a Domestic Limited Partnership (LP) in the State of Texas on Wednesday, July 20, 2011, and is approximately six years old, as recorded in documents filed with the Texas Secretary of State. However, Physicians Radiation Arkansas, LP forfeited its right to transact business in Texas. Subsequently, Physicians Radiation Arkansas filed as a Foreign Limited Partnership in the State of Arkansas on March 6, 2012, listing Jon Tryggestad as an officer and incorporator.  As mentioned above, Northpoint Radiation Center is the General Partner of Physicians Radiation Arkansas, LP and TruRadiation is the Lessor/Manager and Business Associate of Physicians Radiation Arkansas, LP.  Physicians Radiation Arkansas, LP does business as Landmark Cancer Center at 2526 Pinnacle Hills Parkway, Rogers, AR.

12.     **Defendant Pro Physicians Arkansas, P.A.** filed as a Domestic Professional Association in the State of Arkansas on January 1, 2012, and its Incorporator was Dr. Kenneth Gardner.  It is believed to operate like Physicians Radiation Arkansas, LP with physician limited partners who refer patients to the cancer center and get a percentage of the profits under an agreement. Pro Physicians Arkansas submits billing, and receives payment for both commercial insurance and federal payor patients. Pro Physicians is part of the improper scheme in violation of Stark and Anti-Kickback laws through which improper payments to investor physicians are made.  Pro Physician's Arkansas, P.A. billing is processed at the very same address as the billing for Physician's Radiation Arkansas, L.P.  using the same billing personnel.  The only distinction is the name of the billing entity.   HHS-OIG has provided guidance and warnings that when entities attempt to "carve out" Medicare billing from revenue, the relationship is still

suspect, under the Stark and AKS laws because doctors are not likely to refer patients to different locations based on their insurance.  Further, Pro Physician's Arkansas, P.A. and Physician's Radiation Arkansas share the same exact space, equipment and staff.  All treatments are provided by the same people using the same equipment.  Overhead is intertwined.  The only attempted distinction between the entities is the name of the billing entity and that is in name only because the billing office is the same location for each defendant entity.

**Jon D. Tryggestad's Involvement in Entities Mentioned Above**



13.     **Defendant Kenneth E. Gardner**: Dr. Gardner is a physician at Landmark Cancer Center in Rogers, Arkansas at 2526 South Pinnacle Hills Parkway, Rogers, AR 72758.  He is a limited partner with shares, or an ownership or profit interest in Physicians Radiation Arkansas, LP (d/b/a Landmark Cancer Center) through the subscription agreement he entered into with Northpoint Radiation Center, GP, LLC.  Dr. Gardner sees patients at Landmark Cancer Center, creates a plan of treatment, and refers them to Physicians Radiation Arkansas, LP (d/b/a Landmark Cancer Center) for radiation oncology services.  Dr. Gardner has an ownership interest in Physicians Radiation Arkansas, LP (d/b/a Landmark Cancer Center) and his referral of Medicare patients for treatment to an entity in which he has an ownership interest violates the Stark and Anti-kickback laws.

Kenneth Gardner also used his medical license to allow Northpoint Radiation Center, GP, LLC to get an operating license in Arkansas.

## II. JURISDICTION AND VENUE

14.     This action arises under 31 U.S.C. § 3729 *et seq.*, commonly known as the False Claims Act.

15.     Jurisdiction over this action is conferred on this Court by 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331, because this civil action arises under the laws of the United States and at least one of the Defendants resides and can be found in Arkansas and transacts business in Arkansas.

16.     Venue is proper in the Western District of Arkansas under 28 U.S.C. § 1391(b) and (c) and 31 U.S.C. § 3732(a) because at least one Defendant that operated

in concert with other Defendants resides, can be found in, and operates and transacts business in the Western District of Arkansas.

17.     Relator has complied with the requirements of 31 U.S.C. § 3730(b)(2).

## III. THE LAW

### A.     The False Claims Act

18.     The False Claims Act ("FCA") provides, in pertinent part that:

(a) Liability for certain acts.

(1) In general. Subject to paragraph (2), any person who--

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

(D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

(E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(F) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $ 5,000 and not more than $ 10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (*28 U.S.C. 2461* note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729.

### B.   The Anti-Kickback Statute

19.   The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), arose out of Congressional concern that payoffs to those who can influence healthcare decisions would result in goods and services being provided that are medically unnecessary, of poor quality, or even harmful to a vulnerable patient population. To protect the integrity of the program from these difficult to detect harms, Congress enacted a per se prohibition against the payment of kickbacks in any form, regardless of whether the particular kickback gave rise to overutilization or poor quality of care. First enacted in 1972, Congress strengthened the statute in 1977 and 1987 to ensure that kickbacks masquerading as legitimate transactions did not evade its reach. *See* Social Security Amendments of 1972, Pub. L. No. 92-603, §§ 242(b), (c); 42 U.S.C. § 1320a-7b, Medicare-Medicaid Antifraud and Abuse Amendments, Pub. L. No. 95-142; Medicare and Medicaid Patient and Program Protection Act of 1987, Pub. L. No. 100-93.

20.     The Anti-Kickback Statute prohibits any person or entity from making or accepting payment to induce or reward any person for referring, recommending or arranging for federally-funded medical services, including services provided under the Medicare, Medicaid and (as of January 1, 1997) TRICARE programs. In pertinent part, the statute states:

(b) Illegal remuneration

(1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind --

(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(2) whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person --

(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B) to purchase, lease, order or arrange for or recommend purchasing, leasing or ordering any good, facility, service, or item for which payment

> > may be made in whole or in part under a Federal
> > health care program,
> >
> > shall be guilty of a felony and upon conviction thereof, shall
> > be fined not more than $25,000 or imprisoned for not more
> > than five years, or both.

42 U.S.C. § 1320a-7b(b). Violation of the statute can also subject the perpetrator to exclusion from participation in federal health care programs and, effective August 6, 1997, civil monetary penalties of $50,000 per violation and three times the amount of remuneration paid. 42 U.S.C. § 1320a-7(b)(7); 42 U.S.C. § 1320a-7a(a)(7).

21.     Compliance with the Anti-Kickback Statute is, and was at all relevant times, a prerequisite to payment under the Medicare and Medicaid programs and, after August 1996, to payment under CHAMPUS/TRICARE. Defendants are required to certify compliance with the Anti-Kickback Statute as condition of payment when they submit their claims for payment to the aforementioned Federal payers on form CMS 1500.

22.     Defendants' financial relationships that lead to the inducement of referrals do not meet any of the exceptions or safe harbors to the Anti-Kickback Statute.

### C.     The Stark Statute

23.     Section 1877 of the Social Security Act, codified at 42 U.S.C. § 1395nn and commonly referred to as the "Stark Statute," prohibits a physician from referring Medicare patients for certain "designated health services" ("DHS") to an entity with which he has a "financial relationship" unless an exception applies. When originally enacted in 1989 ("Stark I"), the prohibitions applied only to physicians' referrals for clinical laboratories. In 1993-94 Congress expanded the prohibition to additional DHS including "Radiation Therapy Services and Supplies" and applied the Act to Medicaid. Omnibus Budget

Reconciliation Act of 1989, P.L. 103-66, § 13562, Social Security Act Amend. of 1994, P.L. 103-432, § 152. Radiation therapy services and supplies provided by Defendants are at issue in this *qui tam* lawsuit.

24.    In addition to prohibiting certain physician referrals, the Stark Statute prohibits health care entities from presenting or causing to be presented any Medicare claim for DHS provided as a result of a prohibited referral. 42 U.S.C. § 1395(a)(1)(B). Any entity that collects a Medicare payment for DHS rendered under a prohibited referral must refund all collected amounts. 42 U.S.C. § 1395nn(g)(2); 42 C.F.R. § 411.353(g). Any person or entity who bills Medicare for DHS that the person or entity knew, or should have known, resulted from a prohibited referral is also subject to a civil monetary penalty of not more than $15,000 for each service and an assessment by OIG of three times the amount claimed for DHS. 42 U.S.C. § 1395nn(g)(93); 42 CFR § 1003.100 (b)(viii).

25.    Under the Stark Statute, the United States will not pay for certain items or services prescribed or ordered by physicians who have improper financial relationships with the entities that furnish those items or services. Stated conversely, compliance with the Stark Statute is a condition of payment imposed by the Federal Healthcare Programs. One of the major purposes of the statute was to reduce losses suffered by the Medicare program due to overutilization of services.

26.    The Stark Statute broadly defines "financial relationship" to include ownership and investment interest and compensation agreements that involve any direct or indirect remuneration between a physician and an entity providing DHS. A variety of regulatory and statutory exceptions identify specific types of investments and compensation agreements that will not violate its referral and billing prohibitions. Financial

relationships between a physician and an entity providing DHS that do not meet a regulatory or statutory exception violate the statute.

27.     As specified below, some of the transactions and activities into which the Defendants entered and participated violate these prohibitions on financial relationships. They also do not meet the exceptions or safe harbors provided by law.

28.     Where, as here, the government through its governmental reimbursement programs, has conditioned payment of a claim upon a claimant's certification of compliance with a statute or regulation, a claimant submits a false or fraudulent claim when the claimant falsely certifies compliance with the statute or regulation. Defendants submitted their claims, or caused claims to be submitted, on CMS Form 1500s with the required certification for reimbursement but falsely stated that they were in compliance with statutes and regulations, including but not limited to the False Claims Act, Medicare Anti-Kickback Statutes, and Stark Laws.


## IV. THE FEDERAL HEALTHCARE PROGRAMS

### A.     The Medicare Program

29.     In 1965, Congress enacted Title XVIII of the Social Security Act, known as the Medicare Program, to pay for the costs of certain healthcare services.  Entitlement to Medicare is based on age, disability or affliction with end-stage renal disease. *See* 42 U.S.C. §§ 426, 426A. Part B of the Medicare Program authorizes payment for clinical diagnostic laboratory services ordered by a doctor or practitioner including certain blood tests, urinalysis, tests on tissue specimens and some screening tests.

### B.     The Medicaid Program

30.     Medicaid is a joint federal-state program that provides health care benefits for certain groups, primarily the poor and disabled. The federal government provides matching funds and ensures that states comply with minimum standards in the administration of the program.

31.     The federal Medicaid statute sets forth the minimum requirements for state Medicaid programs to qualify for federal funding, which is called federal financial participation ("FFP"). 42 U.S.C. §§ 1396, et seq.

32.     The Medicaid program of each state must cover laboratory services. 42 U.S.C. § 1396a(10)(A), 42 U.S.C. § 1396d(a).

**C.     Tricare/CHAMPUS**

33.     Tricare, formerly known as the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") is a health care program of the United States Department of Defense Military health System. Tricare provides civilian health benefits for military personnel, military retirees and their dependents, including some members of the Reserve Component. These benefits include the laboratory services at issue in this case.

34.     The Tricare program is managed by the Tricare Management Activity ("TMA") under the authority of the Assistant Secretary of Defense (Health Affairs).


**V. FACTUAL ALLEGATIONS**


**The False Claims Act Scheme**

35.     In order to induce physicians to refer patients for expensive radiation oncology therapy, Tryggestad, Sooter, and Dickey through the Defendant entities created

18

limited radiation partnerships with Northpoint Radiation Center GP, LLC as the general partner.  These limited partnerships, such as Physicians Radiation Arkansas, LP, recruit doctors with the ability to refer cancer patients for radiation oncology treatment to become limited partners with an ownership interest in the radiation oncology center.

36.    As stated under the heading "Business Model" in the offering memorandum to physicians, "The Center will provide radiation oncology services for patients referred by physicians who hold a license to practice medicine in the state of Arkansas, including but not limited to the limited partners of the Partnership."

37.    Under the "Business Model," "[t]he partnership [does] not own the Center, its equipment or any other hard asset.  Instead, the Center's assets will be collections and receivables attributable to radiation oncology services rendered at the Center."

38.    The offering memorandum agreement documents claim that the Center will not accept patients who are beneficiaries of a Federal Payer Plan.  In fact, the partnership documents go so far as to lay out the Stark and Anti-Kickback Act prohibitions and the criminal penalties, and then state, "The Partnership does not intend to take referrals of patients for which payment may be made by a federal health care program and thus the Partnership believes that neither the Stark law nor the federal Fraud and Abuse statute will apply to the partnerships operations."

39.    Under heading "Impact of Certain Government Laws and Regulations,"  the offering memorandum agreement goes on to state that no assurances are given and the partnership will not seek an advisory opinion on whether the agreement violates or complies with Stark or the Federal Fraud and Abuse statutes.

40.     Of course, the centers and partnerships could not be profitable and cover the overhead of the centers without federal payer patients.  Many cancer patients are simply Medicare age and have Medicare coverage. In fact, Defendants require physicians working in the centers be eligible to bill Medicare. And, of course, the center/defendants accept referrals of Medicare patients and bill Federal payers for those patients.

41.     In fact, Relators are providing Medicare Claim details for three Medicare patients referred to Landmark Cancer Center in Rogers, Arkansas by Dr. Kenneth Gardner, who was provided radiation oncology services at Landmark Cancer Center in Rogers (Physicians Radiation Arkansas, LP) (in which Gardner has an ownership interest) and Medicare was billed on multiple occasions from January to June of 2014.

42.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1[2] on January 29, 2014.   Defendants billed Medicare under part B and claim number 0214036212280 for radiation oncology therapy services using CPT codes 99204, 77290 and 77334 and charging a total of $2707.00.   Medicare approved $733.80 and paid $575.30.

43.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on January 29, 2014 and February 3, 2014. Defendants billed Medicare under part B and claim number 0214044191320 for radiation oncology therapy services using CPT codes 77263, 77300, 77301, 77338 and charging a total of $19547.00. Medicare approved $3064.40 and paid $2402.49.

---

[2] The identity of this patient is known and is being provided to the Government and will be provided to the Defendants upon request.  The patient's identity is excluded from this complaint to protect the patient's rights to privacy.

44.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on January 30, 2014. Defendants billed Medicare under part B and claim number 0214036212410 for radiation oncology therapy services using CPT codes 78815 and charging a total of $5006.00. Medicare approved $1251.53 and paid $981.20.

45.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on February 4-7, 2014. Defendants billed Medicare under part B and claim number 0214044191330 for radiation oncology therapy services using CPT codes 77470, 77014, 77418 and charging a total of $4194.00. Medicare approved $1048.47 and paid $822.00.

46.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on February 6, 2014. Defendants billed Medicare under part B and claim number 0214051200270 for radiation oncology therapy services using CPT code 77427 and charging a total of $696.00. Medicare approved $174.01 and paid $136.43.

47.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on February 10-14, 2014. Defendants billed Medicare under part B and claim number 0214051200280 for radiation oncology therapy services using CPT codes 77014, 77418, 77336 and charging a total of $7503.00. Medicare approved $1875.86 and paid $1470.68.

48.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on February 13, 2014. Defendants billed Medicare under part B and claim number 0214058342000 for radiation oncology therapy services using CPT code 77427 and charging a total of $696.00. Medicare approved $174.01 and paid $136.43.

49.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on February 17-20, 2014. Defendants billed Medicare under part B and claim number

0214058342010 for radiation oncology therapy services using CPT codes 77014, 77418, 77336 and charging a total of $7503.00. Medicare approved $1875.86 and paid $1470.68.

50.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on February 20, 2014. Defendants billed Medicare under part B and claim number 0214064181340 for radiation oncology therapy services using CPT code 77427 and charging a total of $696.00. Medicare approved $174.01 and paid $136.43.

51.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on February 21, 2014. Defendants billed Medicare under part B and claim number 0214058342020 for radiation oncology therapy services using CPT codes 77014, 77418 and charging a total of $1811.00. Medicare approved $452.79 and paid $354.99.

52.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on February 24-28, 2014. Defendants billed Medicare under part B and claim number 0214064181350 for radiation oncology therapy services using CPT codes 77014, 77418, 77336 and charging a total of $7503.00. Medicare approved $1875.86 and paid $1470.68.

53.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on March 5-10, 2014. Defendants billed Medicare under part B and claim number 0214071229830 for radiation oncology therapy services using CPT codes 77014, 77418 and charging a total of $7244.00. Medicare approved $1811.16 and paid $1419.96.

54.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on March 5, 2014. Defendants billed Medicare under part B and claim number 0214086267450 for radiation oncology therapy services using CPT code 77427 and charging a total of $696.00. Medicare approved $174.01 and paid $136.43.

55.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on March 17-21, 2014. Defendants billed Medicare under part B and claim number 0214086267460 for radiation oncology therapy services using CPT codes 77014, 77418, 77336 and charging a total of $7946.00. Medicare approved $1986.61 and paid $1557.51.

56.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on March 18-27, 2014. Defendants billed Medicare under part B and claim number 0214093361090 for radiation oncology therapy services using CPT codes 77014, 77418, 77427, 77336 and charging a total of $7527.00. Medicare approved $1881.84 and paid $1475.38.

57.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on March 21, 2014. Defendants billed Medicare under part B and claim number 0214086267470 for radiation oncology therapy services using CPT code 77418 and charging a total of $1368.00. Medicare approved $342.04 and paid $268.16.

58.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on March 27-31, 2014. Defendants billed Medicare under part B and claim number 0214093361100 for radiation oncology therapy services using CPT codes 77014, 77418, 77336 and charging a total of $5249.00. Medicare approved $1312.32 and paid $1028.86.

59.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on April 1, 2014. Defendants billed Medicare under part B and claim number 0214107241800 for radiation oncology therapy services using CPT code 77427 and charging a total of $696.00. Medicare approved $174.01 and paid $136.43.

60.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on April 1-4, 2014. Defendants billed Medicare under part B and claim number 0214100236480 for

radiation oncology therapy services using CPT codes 77014, 77418 and charging a total of $7244.00. Medicare approved $1811.16 and paid $1419.96.

61.    Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on April 7, 2014. Defendants billed Medicare under part B and claim number 0214107241810 for radiation oncology therapy services using CPT codes 77418, 77336, 77014 and charging a total of $2070.00. Medicare approved $517.49 and paid $405.71.

62.    Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 1 on June 17, 2014. Defendants billed Medicare under part B and claim number 0214189290240 for radiation oncology therapy services using CPT code 78815, A9552 and charging a total of $5194.70. Medicare approved $1251.53 and paid $981.20.

63.    The provider for the foregoing claims is listed as Kenneth Gardner with the address for Landmark Cancer Center in Rogers, Arkansas – 2526 Pinnacle Hills Parkway. However, the provider billing address of P.O. Box 678300, Dallas, TX 75267 is the address of Physicians Radiation Arkansas, LP's General Partner Northpoint Radiation Center, GP, LLC.

64.    Because Dr. Gardner has an ownership interest in the radiation oncology center to which he refers Medicare and other Federal payer patients, and because the defendants bill Medicare and other federal payers for the radiation oncology services rendered to patients referred by Dr. Gardner and other limited partners, Defendants are in violation of the Stark and Anti-Kickback laws and all such claims submitted to Federal payers are knowing false claims for payment.

65.      Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 2[3] on April 25, 2013. Defendants billed Medicare for radiation oncology therapy services charging a total of $5027.00. Medicare paid $1115.76.

66.      Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 2 on April 29, 2013. Defendants billed Medicare for radiation oncology therapy services charging a total of $4312.00. Medicare paid $897.68.

67.      The provider for Patient 2's foregoing claims is listed as Kenneth Gardner with the billing address listed as Pro Physicians Arkansas, PA at PO Box 678300, Dallas, Texas 75267. This is the same address billed for Patient 1 and the address for Physicians Radiation Arkansas, LP's General Partner Northpoint Radiation Center, GP, LLC.

68.      Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 3[4] on March 6, 2013. Defendants billed Medicare under part B and claim number 0213077448030 for radiation oncology therapy services using CPT codes 78816 and A9552 charging a total of $4839.00. Medicare approved $200 and paid $160.

69.      Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 3 on March 14, 2013. Defendants billed Medicare under part B and claim number 0213084040980 for radiation oncology therapy services using CPT code 99204 charging a total of $367.00. Medicare approved $150.35 and paid $120.28.

---

[3] The identity of this patient is known and is being provided to the Government and will be provided to the Defendants upon request.  The patient's identity is excluded from this complaint to protect the patient's rights to privacy.

[4] The identity of this patient is known and is being provided to the Government and will be provided to the Defendants upon request.  The patient's identity is excluded from this complaint to protect the patient's rights to privacy.

70.     Dr. Kenneth Gardner at Landmark Cancer Center saw Patient 3 on March 25, 2013. Defendants billed Medicare under part B and claim number 0213094374130 for radiation oncology therapy services using CPT code 99212 charging a total of $96.00. Medicare approved $39.60 and paid $31.68.

71.     The provider for Patient 3's foregoing claims is listed as Kenneth Gardner with the billing address listed as Pro Physicians Arkansas, PA at PO Box 678300, Dallas, Texas 75267. This is the same address billed for Patient 1 and Patient 2, and the address for Physicians Radiation Arkansas, LP's General Partner Northpoint Radiation Center, GP, LLC.

72.     The above claims are only examples of the thousands of claims Defendants have submitted to Federal payers for radiation oncology therapy services.  These specific claims are set forth to provide an indicia of reliability to Relators' claims.


**Other Physicians Believed to be Referring Limited Partners in Physician's Radiation Arkansas, LP (d/b/a Landmark Cancer Center)**

73.     This kickback and false claims scheme is not limited to Dr. Kenneth Gardner or Landmark Cancer Center in Rogers, Arkansas.   First, the following additional physicians are alleged and believed to be limited partners in Physicians Radiation Arkansas, LP as they refer exclusively, or nearly exclusively, to Landmark Cancer Center in Rogers, Arkansas.

Dr. Nirmal Kilambi,  NPI # 1861476897
Dr. Mike Wilson, NPI # 1417914813
Dr. Madu Kalyan, NPI # 1386689644
Dr. Lance Henry, NPI # 1679682520
Dr. Robert Zimmerman, NPI # 1669420931
Dr. Doug Treptow, NPI # 1518925759
Dr. Phillip Woodworth, NPI # 1235197492

Dr. Steve Cashman, NPI # 1003812462
Dr. Lance Manning, NPI # 1255445102
Dr. Felicia Johnson, NPI # 1801986393
Dr. Randall Black, NPI # 1942268909
Dr. James Ragland, NPI # 1316069297
Dr. John Lee, NPI # 1154389344
Dr. Mark Hewitt

74.    The following is additional information regarding claims submitted to Medicare as a result of referrals to the Landmark radiation oncology center in Rogers Arkansas by limited partner physicians in Physicians Radiation Arkansas, LP.

75.    Dr. Nirmal Kilambi was a referring physician of patients to the Landmark Radiation Oncology Center in Rogers, Arkansas that generated claims to Medicare of $1,250,460 between January 1, 2012 and December 31, 2016 for services billed under CPT codes 77014 (CT scan guidance for insertion of radiation therapy fields) and 77418 (Intensity modulated radiation treatment delivery per session).   The claims were submitted to Medicare by Defendant Physicians Radiation Arkansas, LP or its related entity Defendant Pro Physicians Arkansas, P.A.  The total amount paid by Medicare as a result of these claims was $229,064.77.  The total number of false claims submitted to Medicare as a result of referrals from Dr. Kilambi, during this same time period, was 1,589. During this time period, Dr. Kilambi also received at least $70,200 in distributions of profit from Physicians Radiation Arkansas, LP based on his ownership interest.  The claims are false claims for payment because they were submitted to Medicare certifying compliance with the Stark Statute and AKS while Dr. Kilambi was in a financial relationship with Physicians Radiation Arkansas, LP that violated those laws.  While the foregoing are the aggregate claims submitted for referrals by investor/limited partner Dr. Kilambi, the

following are specific examples of individual false claims submitted to Medicare for patients referred to the Landmark Cancer Center by Dr. Kilambi.

76.     Patient 4[5] was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Kilambi.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on August 17, 2012 for CPT codes 77418 and 77014.  The amount of the claims submitted to Medicare on a CMS 1500 form were $1,646 for CPT codes 77418 and $510 for CPT code 77014.  Medicare paid $329.18 and $101.96 respectively.

77.     Patient 5 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Kilambi.  She was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on February 15, 2013 for CPT codes 77418 and 77014.  The amount of the claims submitted to Medicare on a CMS 1500 form were $1,646 for CPT codes 77418 and $510 for CPT code 77014.  Medicare paid $280.53 and $88.73 respectively.

78.     Patient 6 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Kilambi.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on November 11, 2013 for CPT codes 77418 and 77014.  The amount of the claims submitted to Medicare on a CMS 1500 form were $1,646 for CPT codes 77418 and $510 for CPT code 77014.  Medicare paid $274.92 and $89.96 respectively.

---

[5] The identities of patients 4 through 20 are known and are provided to the Government and will be provided to the Defendants upon request.  The patient identities are excluded from this complaint to protect the patients' rights to privacy.

79.    Patient 7 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Kilambi.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas P.A., billed Medicare on May 27, 2014 for CPT codes 77418 and 77014.  The amount of the claims submitted to Medicare on a CMS 1500 form were $1,368 for CPT codes 77418 and $443 for CPT code 77014.  Medicare paid $286.16 and $86.83 respectively.

80.    Patient 8 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Kilambi.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on April 6, 2015, April 7, 2015 and April 8, 2015 for CPT code  77014 each day.  The amount of the claims submitted to Medicare on a CMS 1500 forms were $420 for each of the three claims under CPT code 77014.  Medicare paid $82.42 for each of the three claims.

81.    Patient 9 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Kilambi.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on January 18, 19, 20, 21, and 22, 2016 for CPT code 77014 each day. The amount of the claims submitted to Medicare on a CMS 1500 forms were $426 for each of the five claims under CPT code 77014.  Medicare paid $106.51 for each of the five claims.

82.    Dr. Robert Zimmerman was the referring physician of patients to the Landmark Radiation Oncology Center in Rogers, Arkansas that generated claims to Medicare of $1,730,678 between January 1, 2012 and December 31, 2016 for services

billed under CPT codes 77014 (CT scan guidance for insertion of radiation therapy fields) and 77418 (Intensity modulated radiation treatment delivery per session).  The claims were submitted to Medicare by Defendant Physicians Radiation Arkansas, LP or its related entity Defendant Pro Physicians Arkansas, P.A.  The total amount paid by Medicare as a result of these claims was $315,471.44.  The total number of false claims submitted to Medicare as a result of referrals from Dr. Zimmerman, during this same time period, was 2,133.  During this time period, Dr. Zimmerman also received at least $58,500 in distributions of profit from Physicians Radiation Arkansas, LP based on his ownership interest..  The claims are false claims for payment because they were submitted to Medicare certifying compliance with the Stark Statute and AKS while Dr. Zimmerman was in a financial relationship with Physicians Radiation Arkansas, LP that violated those laws. While the foregoing are the aggregate claims submitted for referrals by investor/limited partner Dr. Zimmerman, the following are specific examples of individual false claims submitted to Medicare for patients referred to the Landmark Cancer Center by Dr. Zimmerman.

83.    Patient 10 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Zimmerman.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on August 27, 2012 for CPT codes 77418 and 77014. The amount of the claims submitted to Medicare on a CMS 1500 form were $1,646 for CPT codes 77418 and $510 for CPT code 77014.  Medicare paid $329.18 and $101.96 respectively.

84.     Patient 11 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Zimmerman.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on February 14, 2013 for CPT codes 77418 and 77014. The amount of the claims submitted to Medicare on a CMS 1500 form were $1,646 for CPT codes 77418 and $510 for CPT code 77014.  Medicare paid $280.53 and $88.73 respectively.

85.     Patient 12 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Zimmerman.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on April 9, 2014 for CPT codes 77418 and 77014.  The amount of the claims submitted to Medicare on a CMS 1500 form were $1,368 for CPT codes 77418 and $443 for CPT code 77014.   Medicare paid $286.16 and $86.83 respectively.

86.     Patient 13 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Zimmerman.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on June 22, 23, 24, 25 & 26, 2015 for CPT 77014.  The amount of the claims submitted to Medicare on a CMS 1500 forms were $420 for each of the five claims under code 77014.  Medicare paid $82.42 for each of the five claims.

87.     Patient 14 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Zimmerman.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians

Arkansas, P.A., billed Medicare on February 1, 2, 3, 4 & 5, 2016 for CPT 77014.  The amount of the claims submitted to Medicare on a CMS 1500 forms were $426 for each of the five claims under code 77014.  Medicare paid $83.51 for each of the five claims.

88.     Dr. Randall Black was the referring physician of patients to the Landmark Radiation Oncology Center in Rogers, Arkansas that generated claims to Medicare of $218,358 between January 1, 2012 and December 31, 2016 for services billed under CPT codes 77014 (CT scan guidance for insertion of radiation therapy fields) and 77418 (Intensity modulated radiation treatment delivery per session).   The claims were submitted to Medicare by Defendant Physicians Radiation Arkansas, LP or its related entity Defendant Pro Physicians Arkansas, P.A.  The total amount paid by Medicare as a result of these claims was $47,041.23.   The total number of false claims submitted to Medicare as a result of referrals from Dr. Black, during this same time period, was 229. During this time period, Dr. Black also received at least $35,100 in distributions of profit from Physicians Radiation Arkansas, LP based on his ownership.  The claims are false claims for payment because they were submitted to Medicare certifying compliance with the Stark Statute and AKS while Dr. Black was in a financial relationship with Physicians Radiation Arkansas, LP that violated those laws.  While the foregoing are the aggregate claims submitted for referrals by investor/limited partner Dr. Black, the following are specific examples of individual false claims submitted to Medicare for referrals to the Rogers, Arkansas Landmark Cancer Center by Dr. Black.

89.     Patient 15 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Black.  She was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas,

P.A., billed Medicare on September 10, 2012 for CPT codes 77418 and 77014.  The amount of the claims submitted to Medicare on a CMS 1500 form were $1,646 for CPT codes 77418 and $510 for CPT code 77014.  Medicare paid $329.18 and $101.96 respectively.

90.    Patient 16 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Black.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on November 18, 2013 for CPT codes 77418 and 77014.  The amount of the claims submitted to Medicare on a CMS 1500 form were $1,646 for CPT codes 77418 and $510 for CPT code 77014.  Medicare paid $274.92 and $86.96 respectively.

91.    Patient 17 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Black.  She was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on December 13, 2013 for CPT codes 77418 and 77014.  The amount of the claims submitted to Medicare on a CMS 1500 form were $1,646 for CPT codes 77418 and $510 for CPT code 77014.  Medicare paid $274.92 and $86.96 respectively.

92.    Patient 18 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Black.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on April 27, 28, 29, 2016 for CPT 77014.  The amount of the claims

submitted to Medicare on a CMS 1500 forms were $426 for each of the three claims under code 77014.  Medicare paid $83.51 for each of the three claims.

93.     Dr. Lance Manning was an investor/limited partner in Physicians Radiation Arkansas, L.P.  While an investor/limited partner, he referred patients to the Landmark Cancer Center in Rogers, Arkansas for radiation oncology services.  During 2012-2016, claims were submitted to Medicare for Dr. Manning's referrals to the Landmark Cancer Center by Physicians Radiation Arkansas, L.P. or its related entity Pro Physicians Arkansas, P.A.  During this time period, Dr. Manning received at least $70,200 in distributions of profit from Physicians Radiation Arkansas, LP based on his ownership. The claims submitted for Dr. Manning's referrals to the Landmark Cancer Center in Rogers, Arkansas are false claims for payment because they were submitted to Medicare certifying compliance with the Stark Statute and AKS while Dr. Manning was in a financial relationship with Physicians Radiation Arkansas, LP that violated those laws.  The following are specific examples of individual false claims submitted to Medicare for patients referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Manning.

94.     Patient 19 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Manning.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on September 8, 2014 for CPT codes 77418 and 77014.  The amount of the claims submitted to Medicare on a CMS 1500 form were $1,368 for CPT codes 77418 and $443 for CPT code 77014.  Medicare paid $286.16 and $86.83 respectively.

95.     Patient 20 was referred to the Landmark Cancer Center in Rogers, Arkansas by Dr. Manning.  He was provided radiation oncology services at the center for which Physicians Radiation Arkansas, LP, or its related entity Pro Physicians Arkansas, P.A., billed Medicare on August 12, 13, 14, 15 & 16, 2013 for CPT codes 77418 and 77014 each of the five days.  The amount of the claims submitted to Medicare on a CMS 1500 forms for each of the five days was $1,646 for each of the five CPT codes 77418 and $510 for each of the five CPT code 77014.  Medicare paid $274.92 and $86.96 respectively for each of the five claims.

**Other Cancer Centers likely to be Operating with the Same Limited Partnership Agreement and Illegal Referral Arrangements**

96.     The offering memorandum agreement and limited partnership agreement and related documents for Physicians Radiation Arkansas, LP (d/b/a Landmark Cancer Center) are form documents. While Relators allege very detailed information regarding the Arkansas Limited Partnership, Relators' allege that there are similar limited partnerships with Northpoint Radiation GP, LLC as the general partner performing the billing in other locations in Texas and the Mid-West.

97.     Relators allege that there are Landmark Cancer Centers operating with similar prohibited arrangements and billing Federal payers in at least the following locations:

98.     **Dallas, TX**: 12606 Greenville Ave. Suite 160, Dallas, TX 75243.  The entities involved at this location are TVG Capital GP, LLC, Northpoint Radiation Center GP, LLC, Physicians Radiation Forth Worth, LP, Pro Physicians Clinic and Tru Radiation Partners FW, LLC.

99.   **Plano, TX**: 6957 West Plano Parkway, Suite 1300, Plano, TX 75093.  The entities involved at this location are TVG Capital GP, LLC, Northpoint Radiation Center GP, LLC, Physicians Radiation Network, LP (formerly Physicians Radiation Plano, LP), ProPhysicians clinic and TruRadiation Partners, Plano, LLC.

100.   **Fort Worth, TX**: 800 W. Magnolia Avenue, Fort Worth, TX 76104. The entities involved at this location are TVG Capital GP, LLC, Northpoint Radiation Center GP, LLC, Physician's Radiation Fort Worth, LP, TruRadiation Partners FW, LLC and ProPhysicians Clinic, P.A.

101.   **Weatherford, TX**: 920 Santa Fe Drive, Weatherford, TX 76086.

102.   **San Antonio, TX**: 7718 Louis Pasteur Court Drive, San Antonio, TX 78229. The entities involved at this location are TVG Capital GP, LLC, Northpoint Radiation Center GP, LLC, Physicians Radiation San Antonio, LP, TruRadiation SA, LLC and ProPhysicians Clinic, P.A.

103.   **Muskogee, OK**: 301 N. 32nd Street, Muskogee, OK 74401. The entities involved at this location are TVG Capital GP, LLC, Northpoint Radiation Center GP, LLC, Physicians Radiation Muskogee, LP, TruRadiation Partners Muskogee, LLC and ProPhysicians Clinic, P.A.

104.   **Wichita, KS:** 2077 N. Webb Road, Wichita, Kansas 67206.  The entities involved at this location are TVG Capital GP, LLC, Northpoint Radiation Center GP, LLC, Physicians Radiation Witchita, LP; TruRadiation Partners Witchita, LLC and ProPhysicians Clnic, P.A.

105.   **Richardson, TX:** 399 Melrose Drive, Suite A, Richardson, TX 75080

106.   Further, Relators allege that Defendant NorthPoint Radiation Center, GP, LLC has NPI numbers and locations in Texas, Arkansas, and Kansas.

107.   Lisa Sooter, who is the Director of TruManagement Services LLC and incorporator of TruRadiation Partners Arkansas, LLC, is listed as the owner of the Landmark Cancer Center in Muskogee, Oklahoma.

108.   Relators allege that there is a common referring physician limited partner and payment/billing structure at the other Landmark Cancer Center locations similar to the structure in Rogers, Arkansas.

109.   Because the documents involved acknowledge that the arrangements violate the Stark and Anti-Kickback laws, and because the entities do in fact submit claims to Federal payers for radiation oncology therapy under the aforementioned arrangements, all such claims to Federal payers are false claims for payment subject to treble damages, civil and criminal penalties.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF 31 U.S.C. § 3729(a)(1)(A)

110.   Relators hereby incorporate and re-allege all the preceding paragraphs as if set forth fully herein.

111.   Defendants by and through their agents, officers, and employees, knowingly presented or caused to be presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

112.   The United States has been damaged as a result of Defendants' violations of the False Claims Act in an amount to be proven at trial.  The United States is entitled

to this sum as reimbursement for monies obtained by the Defendants for false claims submitted to the United States.

113.    The United States is entitled to three times the total damages sustained as a result of the Defendants' violations.

114.    The United States is entitled to a civil penalty of not less than $5,500.00 and not more than $11,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410) for each of Defendants' false claims.

115.    Relators are entitled to reasonable attorney's fees and costs under 31 U.S.C. §3730(d)(1).

## COUNT II: VIOLATION OF 31 U.S.C. § 3729(a)(1)(B)

116.    Relators hereby incorporate and re-allege all of the preceding paragraphs as if fully set forth herein.

117.    Defendants by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B).

118.    The United States has been damaged as a result of Defendants' violations of the False Claims Act in an amount to be proven at trial.  The United States is entitled to this sum as reimbursement for monies obtained by the Defendants for false claims submitted to the United States.

119.    The United States is entitled to three times the total of damages sustained as a result of the Defendants' violations of 31 U.S.C. § 3729(a)(1)(B).

120.    The United States is entitled to a civil penalty of not less than $5,500.00 and not more than $11,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410) for each of Defendants' false claims.

121.    The Relators are entitled to reasonable attorney's fees and costs under 31 U.S.C. §3730(d)(1).

### COUNT III: VIOLATION OF 31 U.S.C. § 3729(a)(1)(C)

122.    Relators hereby incorporate and re-allege all of the preceding paragraphs as if fully set forth herein.

123.    Each of the above named Defendants conspired with other named Defendants to knowingly present, cause to be presented, a false or fraudulent claim for payment; and conspired to knowingly make use or cause to be made a false record or statement material to a false or fraudulent claim; and knowingly conspired to conceal or avoid an obligation to pay or transmit money to the government in violation of 31 U.S.C. § 3729(a)(1)(C).

124.    The United States has been damaged as a result of Defendants' violations of the False Claims Act in an amount to be proven at trial.  The United States is entitled to this sum as reimbursement for monies obtained by the Defendants for false claims submitted to the United States.

125.    The United States is entitled to three times the total of damages sustained as a result of the Defendants' violations of 31 U.S.C. § 3729(a)(1)(C).

126.    The United States is entitled to a civil penalty of not less than $5,500.00 and not more than $11,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment

Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410) for each of Defendants' false claims.

127.    The Relators are entitled to reasonable attorney's fees and costs under 31 U.S.C. § 3730(d)(1).

### COUNT IV: VIOLATIONS OF 31 U.S.C. § 3729(a)(1)(G)

128.    Relators hereby incorporate and re-allege all the preceding paragraphs as if set forth fully herein.

129.    Defendants, by and through it agents, officers, and employees, knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729(a)(1)(G).

130.    The United States has been damaged as a result of Defendants' violations of the False Claims Act in an amount to be proven at trial.  The United States is entitled to this sum as reimbursement for monies obtained by the Defendants for money improperly withheld from the United States.

131.    The United States is entitled to three times the total damages sustained as a result of Defendants' violations of 31 U.S.C. § 3729(a)(1)(G).

132.    The United States is entitled to a civil penalty of not less than $5,500.00 and not more than $11,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 Note; Public Law 104-410) for each of Defendant's false claims.

133.    The Relators are entitled to reasonable attorney's fees and costs under 31 U.S.C. § 3730(d)(1).

### COUNT V: FALSE BILLINGS INCIDENT TO ANTI-KICKBACK AND STARK ACT VIOLATIONS

134.    Relators hereby incorporate and re-allege all preceding paragraphs as if set forth fully herein.

135.    From 2009 to the present, Defendants violated the Anti-Kickback/Self-Referral Laws, 42 U.S.C. § 1395nn (a)(1), (h)(6) and 42 U.S.C. §1320a-7b(b), by entering into prohibited financial relationships with physicians, in order to obtain referrals of their patients.

136.    Defendants' violations of these laws rendered them statutory ineligible to receive payment for services rendered to patients referred under these prohibited relationships, under both the express terms of 42 U.S.C. §1395nn and by operation of the Medicaid/Medicare laws and regulations, including 42 C.F.R. §424.5 (a).

137.    The United States conditions payment on Defendants' compliance with the Anti-Kickback/Self Referral laws, 42 U.S.C. §§ 1395nn (a)(1), (h)(6) and 1320a-7b (b).

138.    Defendants submitted and continue to submit claims for payment for radiation oncology therapy services and supplies rendered to Medicare, Medicaid, Tricare and CHAMPUS patients while knowingly violating the Anti-Kickback/Self Referral laws and thereby statutorily ineligible to receive payment in violation of the False Claims Act, 31 U.S.C. § 3729.

139.    Defendants' actions also caused the submission of claims for payment for services rendered for Medicare, Medicaid, Tricare, and CHAMPUS patients while

Defendants were knowingly violating the Anti-Kickback/Self Referral laws and statutorily ineligible to receive payment violating the False Claims Act 31 U.S.C. §3729.

140. Accordingly, Defendants, by and through its agents, officers, and employees, knowingly presented or caused to be presented false or fraudulent claims for payment or approval and knowingly made, used, caused to be made or used, false records or statements material to a false or fraudulent claim and/or knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729.

141. The United States has been damaged as a result of Defendants' violations of the False Claims Act in an amount to be proven at trial. The United States is entitled to this sum as reimbursement for monies obtained by the Defendants for false claims submitted to the United States.

142. The United States is entitled to three times the total damages sustained as a result of Defendant's violations of the 31 U.S.C. § 3729.

143. The United States is entitled to a civil penalty of not less than $5,500.00 and not more than $11,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 Note; Public Law 104-410) for each of Defendants' false claims.

144. The Relators are entitled to reasonable attorneys' fees and costs under 31 U.S.C. §3730(d)(1).

## PRAYER FOR RELIEF

WHEREFORE, Relators pray that this Court enter an order granting the following judgment and relief:

(a)     Ordering the Defendants to pay the United States Government three times its actual damages resulting from the Defendants' violations of the False Claims Act;

(b)     Ordering Defendants to pay the United States Government a civil penalty for each false claim as set forth in the False Claims Act;

(c)     Awarding Relators an amount the Court decides is reasonable for collecting the civil penalty and monetary damages by pursuing this matter, which award, by statute shall not be less than 15% nor more than 25% of the proceeds of this action or the settlement of any such claim, if the Government intervenes in the action and not less than 25% nor more than 30% if the Government declines to intervene in the action.

(d)     Ordering the Defendants to pay Relators' attorney's fees and cost;

(e)     Granting such other relief as the Court may deem just and proper.

**RELATORS DEMAND TRIAL BY  STRUCK JURY.**

Respectfully submitted,

/s/ Shawn B. Daniels
Shawn B. Daniels, AR Bar No. 99126
Don McKenna *Admitted Pro Hac Vice*
HARE, WYNN, NEWELL & NEWTON, LLP
129 West Sunbridge Drive
Fayetteville, AR 72703
Phone: (479) 521-7000

Fax: (479) 437-2007
Shawn@hwnn.com
Don@hwnn.com

**Attorneys for Relators**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 18, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Deborah J. Groom
Assistant United States Attorney
Western District of Arkansas
414 Parker Avenue
Fort Smith, AR 72901
(479) 783-5125
debbie.groom@usdoj.gov

**Attorney for the United States**

Todd P. Lewis
Conner & Winters, LLP
4375 N. Vantage Dr., Ste 405
Fayetteville AR 72703
tlewis@cwlaw.com

Stacy Brainin
Chris Rogers
Haynes and Boone, LLP
2323 Victory Avenue Suite 700
Dallas, TX 75219
Tel: (214) 651-5000
stacy.brainin@haynesboone.com
chris.rogers@haynesboone.com

**Attorneys for All Defendants *other than* Defendant Gardner**

Thomas B. Staley
124 W Capitol Avenue Ste 1900
Little Rock, AR 72201-3717
Tel: (501) 376-4531
tstaley@elhlaw.com

Kenneth R. Shemin
Shemin Law Firm, PLLC
333 Pinnacle Hills Parkway
Rogers AR 72758
ken@sheminlaw.com

**Attorneys for Defendant Gardner**

And *Via* E-mail to:

David Finkelstein
United States Department of Justice
601 D St. NW Rm 9605
Washington, DE 20579
Tel: (202) 616-2971
David.M.Finkelstein@usdoj.gov

**Attorney for the United States**

<u>/s/Shawn Daniels</u>