## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel.** | § | |
| **Dr. J. Thaddeus Beck;** | § | |
| **Dr. Daniel S. Bradford;** | § | |
| **Dr. Gregory J. Oakhill;** | § | |
| **Dr. Stephen B. Rosenfield;** | § | |
| **Dr. Eric S. Schaefer; and** | § | |
| **Dr. Patrick M. Travis** | § | |
| | § | |
| **Relators,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **TruRadiation Partners Arkansas, LLC;** | § | |
| **Northpoint Radiation Center GP, LLC;** | § | |
| **Physicians Radiation Arkansas, LP;** | § | |
| **ProPhysicians Arkansas, P.A.;** | § | |
| **Kenneth E. Gardner, M.D.** | § | |
| | § | |
| **Defendants,** | § | **CASE NO. 5:15-5275-TLB** |
| **Counterclaim-Plaintiffs,** | § | |
| | § | |
| **TruRadiation Partners Arkansas, LLC;** | § | |
| **Northpoint Radiation Center GP, LLC;** | § | |
| **Physicians Radiation Arkansas, LP;** | § | |
| **ProPhysicians Arkansas, P.A.;** | § | |
| | § | |
| **Third-Party Plaintiffs,** [i] | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Dr. J. Thaddeus Beck;** | § | |
| **Dr. Daniel S. Bradford;** | § | |
| **Dr. Gregory J. Oakhill;** | § | |
| **Dr. Stephen B. Rosenfield;** | § | |
| **Dr. Eric S. Schaefer;** | § | |
| **Dr. Patrick M. Travis; and** | § | |
| | § | |
| **Counterclaim-Defendants.** | § | |
| | § | |
| **Highlands Oncology Group, P.A.** | § | |
| | § | |
| **Third-Party Defendant.** | § | |

---

[i] The Third Party Complaint is pursued by the Landmark Defendants only.

## LANDMARK DEFENDANTS' THIRD PARTY COMPLAINT
## AGAINST HIGHLANDS ONCOLOGY GROUP, P.A.

Pursuant to Federal Rule of Civil Procedure 7(a)(1), Defendants, Counterclaim-Plaintiffs, and Third-Party Plaintiffs TruRadiation Partners Arkansas, LLC ("TruRadiation"); Northpoint Radiation Center GP, LLC ("Northpoint"); Physicians Radiation Arkansas, LP ("PRA"); and ProPhysicians Arkansas, P.A. ("ProPhysicians") (collectively, "Landmark" or the "Landmark Defendants") file this Third Party Complaint (the "Third Party Complaint"). In support, the Landmark Defendants plead:

1.      This litigation serves no purpose other than to protect the commercial interests of Third-Party Defendant Highland Oncology Group, P.A. (the "Third-Party Defendant"), and Relators/Drs. J. Thaddeus Beck, Daniel S. Bradford, Gregory J. Oakhill, Stephan B. Rosenfeld, Eric S. Schaefer, and Patrick M. Travis (the "Counterclaim-Defendants) (collectively, "HOG" or the "HOG Defendants").

2.      The Highland Oncology Group holds and has held an exclusive monopoly over the market radiation oncology services in Northwest Arkansas from the time it acquired the assets of its nonprofit predecessor—NARTI—in 2008.   Since Landmark opened its cancer treatment center in 2012, HOG has done everything in its power to prevent Landmark from establishing itself as an alternative radiation oncology service provider. HOG's goal is to limit patients' cancer treatment options to one provider—HOG.

3.      HOG filed confusing trade names with the Arkansas Secretary of State, claiming the right to do business as "Landmark Cancer Center" or "Northpoint Radiation Center," not because it ever intended to operate under those names, but only because it knew those were Landmark's typical naming conventions. It advertised itself on its website and in

online advertising using terms like "Landmark" and "Northpoint" to cause confusion and prevent referrals from ever reaching Landmark.

4.    HOG opposed Landmark's applications for permits to do business or build a vault for its radiation therapy equipment with the local planning commission.

5.    HOG deliberately interfered with Landmark's attempts to bring new physicians into Northwest Arkansas to provide cancer care, sometimes by luring the physicians to HOG with more lucrative compensation and other times scaring away alternative care providers with implicit threats of withholding referrals.

6.    HOG has attempted to negotiate for exclusivity for itself in its dealings with payers and other healthcare providers (e.g., local area hospitals) often by providing false and disparaging information about Landmark.

7.    HOG has repeatedly hired away trained Landmark personnel, in order to make it more difficult for Landmark to do business.

8.    After failing to completely prevent Landmark from entering the market by commercial measures, HOG resorted to acts beyond mere competition to drive Landmark from Northwest Arkansas.

9.    Someone, acting at HOG's direction, intentionally installed ransomware onto Landmark's computer systems, using the login credentials of a former Landmark employee hired by HOG, in an effort to hijack Landmark's records and disrupt its patient care.

10.    HOG physicians filed this litigation as a *qui tam* under seal, not alleging patient harm, overtreatment, or overbilling, but only that—in their mistaken view—

Landmark's business model renders referrals to Landmark by physicians illegal (while HOG's referrals from its physician owners are allegedly legal).

11.     Before the *qui tam* suit was unsealed, representatives from HOG pursued a "business negotiation" with Landmark under false pretenses to gain information to bolster their litigation.

12.     Based on its actions, Landmark perceives that HOG will stop at nothing to cause Landmark to cease operations in Northwest Arkansas.  If not for the patients who rely on Landmark to provide them with a superior cancer care experience and the respected local physicians who continue to see the need for an alternative cancer care provider in Northwest Arkansas, it probably would.

## I.   **PARTIES**

13.     Defendant, Counterclaim-Plaintiff, and Third-Party Plaintiff TruRadiation Partners Arkansas, LLC, is a domestic limited liability company organized under the laws of the State of Texas with a principal place of business at 2526 Pinnacle Hills Parkway in Rogers, Arkansas.

14.     Defendant, Counterclaim-Plaintiff, and Third-Party Plaintiff Northpoint Radiation Center GP, LLC, is a domestic limited liability company organized under the laws of the State of Texas with a principal place of business at 2701 Custer Parkway, Suite 819 in Richardson, Texas.

15.     Defendant, Counterclaim-Plaintiff, and Third-Party Plaintiff Physicians Radiation Arkansas, LP, is a limited partnership organized under the laws of the State of Texas with a principal place of business at 2526 Pinnacle Hills Parkway in Rogers, Arkansas.

16.     Defendant, Counterclaim-Plaintiff, and Third-Party Plaintiff Pro Physicians Arkansas, P.A., is a professional association organized under the laws of the State of Arkansas with a principal place of business at 2526 Pinnacle Hills Parkway in Rogers, Arkansas.

17.     Third-Party Defendant Highlands Oncology Group, P.A., is a professional association organized under the laws of the State of Arkansas with a principal place of business at 3232 N. North Hills Boulevard in Fayetteville, Arkansas. Its registered agent for service of process, with the Arkansas Secretary of State, is Kathey Rhoads at 3232 N. North Hills Boulevard in Fayetteville, Arkansas, which is located within the Western District of Arkansas. Its officers include Dan Bradford (President), J. Thaddeus Beck (Secretary), and Patrick Travis (Vice-President).

18.     Relator and Counterclaim-Defendant Dr. J. Thaddeus Beck is a member of the Highlands Oncology Group, P.A., and a resident of the state of Arkansas and the Western District of Arkansas.

19.     Relator and Counterclaim-Defendant Dr. Daniel S. Bradford is a member of the Highlands Oncology Group, P.A., and a resident of the state of Arkansas and the Western District of Arkansas.

20.     Relator and Counterclaim-Defendant Dr. Gregory J. Oakhill is a member of the Highlands Oncology Group, P.A., and a resident of the state of Arkansas and the Western District of Arkansas.

21.     Relator and Counterclaim-Defendant Dr. Stephan B. Rosenfeld is a member of the Highlands Oncology Group, P.A., and a resident of the state of Arkansas and the Western District of Arkansas.

22.     Relator and Counterclaim-Defendant Dr. Eric S. Schaefer is a member of the Highlands Oncology Group, P.A., and a resident of the state of Arkansas and the Western District of Arkansas.

23.     Relator and Counterclaim-Defendant Dr. Patrick M. Travis is a member of the Highlands Oncology Group, P.A., and a resident of the state of Arkansas and the Western District of Arkansas.

## II.    <u>Subject Matter Jurisdiction</u>

24.     This Court possesses jurisdiction over this matter by operation of 28 U.S.C. Section 1337, which grants original jurisdiction to the district court for any civil action or proceeding arising under any act of Congress. Jurisdiction is also based on 15 U.S.C. Sections 15 and 26, which provide for damages and injunctive relief against threatened loss or damage, for violations of Sections 1 and 2 of the Sherman Act, and for costs of suit, including reasonable attorneys' fees.  This Court also has federal question jurisdiction over the other claims brought under the Computer Fraud and Abuse Act, 18 U.S.C. Section 103; and the Lanham Act, 15 U.SC. Section 1125(a)(1);  pursuant to 28 U.S.C. Section 1331 and 1337(a) and it has pendent jurisdiction over the claims which are not brought pursuant to the federal antitrust laws via 28 U.S.C. § 1331.

25.     Landmark's federal antitrust claims arise under Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) and under Sections 4 and 6 of the Clayton Act (15 U.S.C. §§ 15 and 26) to (i) recover damages from HOG, including treble damages, costs of

suit and reasonable attorneys' fees, for injuries sustained by Landmark to its business and property by reason of HOG's violations of Sections 1 and 2 of the Sherman Act; and (ii) obtain injunctive relief against HOG and their respective members, divisions, officers, directors, employees, agents, subsidiaries and affiliates to restrain them from further and continued violations of Sections 1 and 2 of the Sherman Act.

26.     This action is also instituted pursuant to HOG's violation of the Arkansas Deceptive Trade Practices Act, *Ark. Code Ann.* Section 4-88-101, *et seq.*, and the general common laws of the State of Arkansas by its interfering with Landmark's existing business relationships and the intentional interference with Landmark's prospective business relationships, as well as Landmark's commission of common law unfair competition and injurious falsehood. This Court has supplemental jurisdiction over the claims described in this paragraph because 28 U.S.C. Section 1367 confers jurisdiction on claims that are so related to the federal claims, including the claims in HOG's Original Complaint, that they form part of the same case or controversy and involve a common nucleus of operative fact. It is in the interests of judicial economy and fairness to litigate these matters simultaneously and in the same Court.

27.     This District is an appropriate venue for the commencement of this litigation pursuant to Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. Sections 15, 22, and 26, and under 28 U.S.C. Sections 1391(b) and (c). Venue is also proper as to these claims as they assert mandatory counterclaims. Finally, venue is also proper since the HOG Defendants have their residence or principal offices in this District and are doing business in this District.

28.    HOG is engaged in interstate commerce arising from this District and in activities affecting interstate commerce.  HOG provides oncology services to patients who reside outside the State of Arkansas, receives payments from insurers who reside outside this state, and engages in the purchase of materials and services from outside this state to support the operation of their businesses in this District.  HOG's anticompetitive practices, described more fully in this Counterclaim and Third Party Complaint, have had and continue to have a substantial adverse effect on interstate commerce by, among other things, preventing patients from receiving Oncology Services from Landmark, limiting Landmark's ability to contract with existing service providers, referral sources, and/or insurance companies, or to recruit new service providers from outside this state.

### III.    Geographic Market

29.    The relevant geographic market for radiation oncology services is the area defined by the United States Census Bureau as the Fayetteville–Springdale–Rogers Metropolitan Statistical Area ("Northwest Arkansas").   This area includes Fayetteville, Springdale, Rogers, and Bentonville, the third, fourth, eighth and tenth largest cities in Arkansas.  Arkansas's population is largely concentrated in urban areas spread throughout the state, and many of these areas are separated from each other by considerable distances.

30.    Because patients who need radiation oncology services need to receive these services at a physical location containing specialized equipment on a specific schedule (e.g., a certain number of treatments at specified intervals over a multi-week period), it is not practical for individuals to travel long distances to seek alternative providers for radiation oncology services.  The closest communities with alternative radiation oncology service providers – Fort Smith, (78 miles), Tulsa (111 miles), Springfield (117 miles), or Little Rock

(192 miles) – are too remote to offer a realistic alternative to individuals in need of daily, semi-weekly, or weekly radiation oncology services across a multi-week period.

## IV.    **Product Market**

31.    Landmark offers patients in Northwest Arkansas a full range of radiation oncology services and various related radiology and laboratory services.

32.    Oncology is the diagnosis, management and treatment of cancer.

33.    Radiation oncology services include a number of different treatment methods that use high-energy rays to kill cancer cells. Radiation oncology is part of Landmark's multidisciplinary approach to the treatment of cancer.

34.    Medical oncology services include a number of different treatment methods that use medicine and medical therapies, rather than surgical or radiation therapies to treat cancer. These include, for example, systemic treatments such as chemotherapy.

35.    Hematology services include the diagnosis, management and treatment of benign and malignant diseases of the blood and blood forming tissues. This includes, for example, the diagnosis and treatment of leukemia.

36.    Many oncology service providers offer their patients services that are ancillary to its medical oncology, hematology and/or radiation oncology services. These services include radiology or imaging services, laboratory services, a pharmacy dispensing clinic, genetic counseling and testing, and social work services that help families cope with the hardships created by cancer.

37.    HOG obtained, holds, and maintains a monopoly over the market for radiation oncology services in Northwest Arkansas. From 2008 and until Landmark's opening in

2012, HOG was the only provider of comprehensive cancer treatment in Northwest Arkansas.

38.    Landmark believes that HOG maintains approximately a 93% market share over the market for radiation oncology services in Northwest Arkansas.  Until Landmark's entry in 2012, HOG had a 100% market share over the market for radiation oncology services in Northwest Arkansas

39.    Radiation oncology services require specialized personnel, equipment, and facilities.  The provision of radiation oncology services includes both a professional component and a technical component.  The provision of either component of radiation oncology services requires expertise, skill, and training.  In addition, diagnosing and treating cancer requires specialized equipment and resources and must be conducted in a specially-designed facility.  Moreover, radiation oncology services are a distinct market from other types of cancer diagnosis and treatment.  Patients who are diagnosed with a cancer that can be treated using radiation may or may not be eligible for alternative forms of treatment, such as chemotherapy or surgery.  For some patients, the only treatment option available is some form of radiation.  Therefore, radiation oncology services are separate and distinct product market from other alternatives in cancer care.

## V.    Why Landmark Cancer Center Came to Northwest Arkansas

40.    Landmark came to Northwest Arkansas in 2012 after a group of well-respected local physicians expressed concern about a lack of alternative treatment options for their patients who needed radiation oncology and other cancer treatment services to representatives for the entities who ultimately opened the Landmark Cancer Center in Rogers, Arkansas.

41.     These physicians expressed a concern that the only other treatment provider, HOG, was rendering substandard care.  Landmark heard concerns throughout the medical community that HOG was offering a substandard patient experience.  Specifically, concerns were raised to Landmark that HOG physicians were overtreating their patients by insisting on PET/CT scans for all new patients, even patients who had recently had imaging; that they ordered PET/CT scans on patients where imaging was not necessary to the treatment of that patients' cancer, and that their doctors routinely did not collaborate with the referring physicians when developing a plan to treat patients referred, by necessity, to HOG for specialized cancer treatment services like radiation oncology, medical oncology, or hematology.

42.     Perhaps worse, patient experience at HOG was reported to be substandard. For patients facing life-threatening illness, state of mind is essential.  Physicians felt uncomfortable recommending that their patients get radiation treatments at HOG, because they could not be assured that HOG would provide a patient-first experience to cancer patients who literally had no other choice but to seek out services from HOG.

43.     More recently, the types of behaviors exhibited by HOG physicians continue to reflect that of a service provider with ultimate market power.  Upon information and belief, HOG physicians have instructed patients that they were required to fulfill prescriptions through a HOG-owned pharmacy, when of course they were not.  And in many instances, these patients could have obtained the medications sold through the HOG-owned pharmacy through retail or mail-order outlets for significantly lower prices.

44.     Responding to the identified need, Landmark agreed to open a center in Rogers, Arkansas.

## VI.   **HOG Monopolizes Cancer Treatment in Northwest Arkansas**

45.     HOG has controlled a monopoly over cancer treatments, particularly radiation oncology services, in Northwest Arkansas since at least 2008.

46.     Prior to 2008, the only provider of radiation oncology services in Northwest Arkansas was a non-profit entity called Northwest Arkansas Radiation Therapy Institute (NARTI).  NARTI was established as a grassroots, cooperative by 13 then-existing hospitals across a five-county area to give cancer patients in the Northwest Arkansas area an opportunity to receive cancer care in their own community.  The hospitals provided some limited financial support, while the land where the original NARTI center was built was donated by local families.  The land was significant, according to NARTI's founders, because it enabled the non-profit corporation to begin operations without the debt of a land purchase in a neutral site conveniently located near what would become Interstate 49 and Highway 412.

47.     At the core of NARTI's mission was providing cancer care to all patients, regardless of ability to pay.

48.     NARTI was forced to shutter its doors in 2008 when presented with an ultimatum from HOG – either sell your assets to us or we will bring in a competing business to shut yours down.  As a result, NARTI ceased to exist, and its assets, including the land donated by the local families and the radiation therapy vault built with donated funds, came under the control of the Highlands Oncology Group.  Through no accident, many employees of NARTI became employees of HOG or a HOG-controlled entity.  *See* Highlands Oncology

Group to Purchase Services from NARTI, Merges with Ozark Radiation Oncology, Arkansas Business (May 10, 2008).

49.     Even after NARTI shut its doors, no hospitals offered radiation oncology services for Northwest Arkansas patients. Patients in need of radiation therapy in Northwest Arkansas, after NARTI was acquired by HOG, had little choice – either travel to Tulsa (111 miles), Springfield (117 miles), or Little Rock (192 miles) or receive cancer treatments at HOG.

50.     It was not surprising that HOG was able to maintain this position.  There are significant barriers to entry in the radiation oncology space, illustrated by the community effort required to assemble the donations and support that led to the establishment of NARTI. Radiation oncology services are rendered by one or more highly sophisticated pieces of equipment called linear accelerators which deliver the radiation to the precise location designated for treatment. These machines are extremely expensive, and the cost to create a physical space where radiation therapy will be administered, often called a vault, are similarly high.

51.     Likewise, due to the radioactive nature of the services, many areas require special permitting or licensure before constructing a space designed for the administration of radiation therapy services.

52.     The best designed space and latest equipment also only have usefulness with trained personnel who can design, administer, and manage a course of radiation therapy for a patient's specific disease.  A team consisting of a radiation oncologist, radiation physicist, and technicians, each with specific skills, expertise, and training, are required.

53.     Once you have the physical space, equipment, and personnel to administer radiation oncology services, a business still has to enter into a series of other contracts or relationships in order to be paid.

54.     Finally, the radiation therapy center may need to align with one or more payer or provider-based networks.  Often, insurers or providers (e.g., hospitals) establish "preferred provider" status to signify to their patients which providers they recommend or require their patients utilize for specialized services like radiation therapy.

**VII.**     **From the Beginning, HOG Saw Landmark as a Competitive Threat and Attempted to Regain its Monopoly on Cancer Treatment in Northwest Arkansas**

55.     At every step along the way, HOG, its physicians, and their agents made every effort to block Landmark's attempts to open a cancer center in Northwest Arkansas.

56.     HOG quickly registered "fictitious names" with the Arkansas Secretary of State in an attempt to cause confusion or deter Landmark's entry into Arkansas, registering the following names with the Arkansas Secretary of State:   "LANDMARK CANCER CENTER," "LANDMARK CANCER CENTER OF NORTHWEST ARKANSAS," and "NORTHPOINT RADIATION CENTER."



57.     Upon information and belief, HOG has never operated nor ever intended to operate under any of those names.

58.     HOG also attempted to create confusion around the Landmark name.  Upon information and belief, HOG changed the text on its website to use the word "Landmark" so that search results for Landmark Cancer Center would locate HOG-controlled webpages. Based on the results of its own internet search results, Landmark also believes HOG may have acquired advertising rights to certain searches including the terms Landmark or Northpoint.

59.     Upon information and belief, HOG physicians or their representatives contacted the Rogers Planning Commission in an attempt to convince the Commission not to approve Landmark's request to build a vault for administering radiation therapy in Rogers.

60.     Those attempts were ultimately unsuccessful.

61.     HOG also attempted to interfere with Landmark's operations by disrupting its ability to service its patients.  Since 2012, HOG has hired away at least six then-current Landmark employees, including radiation technicians and other highly skilled staff.

62.     HOG has recruited physicians away from Landmark who Landmark attempted to bring in to support its radiation oncology or other service lines.  Despite the allegations in the Amended Complaint in this action, the sales pitch to each of those physicians was that they could make more money by joining HOG than they ever could by working with Landmark in any capacity.

63.     Finally, HOG has attempted to obtain preferred provider status with payers (insurance companies) and referral sources, to the exclusion of Landmark by wrongful conduct, including providing false and disparaging information about Landmark.  Upon information and belief, HOG has attempted to use its market power and position to negotiate contracts making them the preferred or exclusive provider with payers or other healthcare providers (e.g., hospitals) who could operate as a source of referrals for HOG.  In addition, HOG has spent large sums of money on marketing, meals and entertainment directed toward referral sources or people in positions of authority over the industry – including hospital executives, other physicians in a position to diagnose cancer, and local officials who held positions of authority over the process of setting up and operating a business in Northwest Arkansas.

64.     Landmark was independently aware of the influence that HOG and its physicians have in Northwest Arkansas by third-party observation, but the point was

**LANDMARK DEFENDANTS'**
**THIRD PARTY COMPLAINT**                                                            **PAGE 16**

reinforced to them during business discussions between Landmark representatives and HOG physicians Beck and Bradford, who bragged that they were "the most well connected" oncologists in the community. Landmark now believes that those business discussions were simply a pretext for HOG to gather information in connection with its undisclosed *qui tam* lawsuit.

**VIII.** **Failing to Prevent Landmark's Entry into the Market, HOG Now Attempts to Eradicate Landmark.**

*Litigation*

65.     When all of HOG's other efforts failed to prevent Landmark's entry into Northwest Arkansas, Drs. J. Thaddeus Beck, Daniel S. Bradford, Gregory J. Oakhill, Stephan B. Rosenfeld, Eric S. Schaefer, and Patrick M. Travis ultimately filed this lawsuit on November 4, 2015. The allegations are far different from the usual *qui tam* – the lawsuit is devoid of inside information and fails to even correctly describe the business structure of the Landmark entities. Since the entire premise of the lawsuit is that Landmark is illegally structured, this is a significant flaw.

66.     The litigation does not allege that patients were over treated, that more or less care was provided to Landmark patients than was necessary, that the care Landmark patients received was substandard, or that federal programs were overbilled or improperly billed for services rendered. Rather, HOG's entire complaint is ultimately that these patients would have gone to an alternative provider if not for alleged "kickbacks" paid by Landmark. In this market, the only alternative is HOG.

67.     The lawsuit was brought in bad faith and only as an attempt to regain a complete monopoly over radiation oncology services in Northwest Arkansas.

68.     The Complaint made allegations that were simply untrue – specifically, that Dr. Kenneth Gardner made referrals to the Landmark Cancer Center and that he was an owner in Physicians Radiation Arkansas, LP.  Neither allegation is correct.  And while one may require nonpublic information to disprove, a group of oncologists would obviously be aware that Dr. Gardner, as a radiation oncologist, is the recipient of referrals for radiation therapy, not the generator of them.  Only Dr. Gardner's referrals were identified in the Original Complaint.

69.     In October of 2017, after Landmark filed its motion to dismiss the Original Complaint, the Relators amended their complaint, but for two years, this lawsuit was perpetuated based on a core allegation that the Relators knew to be incorrect.

## IX.     Illegal Computer Access / Attempts to Disable the Landmark Computer Network

70.     Not all of HOG's attempts to interfere with Landmark's business dealings have been as indirect as hiring employees, marketing under false names, disparaging Landmark in the medical community, and hiring its employees.

71.     In at least one instance, Landmark believes that HOG, or someone acting at HOG's direction, illegally and improperly access Landmark's computer systems with an intent to do harm to Landmark.

72.     Over the course of the Memorial Day weekend in 2016, shortly after an employee left Landmark to work for HOG, that employee's username and password were used to remotely access Landmark's computer systems.  The unauthorized user used a former employee's email account and login credentials to intentionally activate a piece of ransomware designed to hijack as many Landmark systems as it could access by encrypting all data it could on systems it touched. This ransomware was, at the time, unknown to

Landmark's data security applications, and so it was able to encrypt and render useless key components of Landmark's IT system including several of its workstations.

73.     After the former employee's departure, that unauthorized user, or someone else using valid login credentials, was observed logging into a remote desktop running on Landmark's servers and manually installing another piece of ransomware into Landmark's operating environment.  As the company worked to restore uninfected backups and resolve the issue, IT personnel for Landmark witnessed the remote user using these credentials log in through the company's Remote Desktop Server and attempt to reinstall the ransomware.

74.     The attack, unlike a typical ransomware attack or phishing attempt, appeared to generate no failed logins (from failed password attempts) or failed connections (from attempts to access systems in a foreign IT environment.  What seemed clear is that this attack was performed by someone with knowledge of Landmark's IT environment and with an intent to do harm to the center by affecting its ability to operate.

75.     The ransomware attack was initiated through the computer terminal formerly belonging to the now-HOG employee.

### COUNT I
### Unlawful Maintenance of Monopoly Power
### Violation of Section 2 of the Sherman Act

76.     Landmark incorporates its prior allegations as if fully restated herein.

77.     HOG, through the acts and practices alleged above, has willfully maintained a monopoly in the market for radiation oncology services in Northwest Arkansas in violation of Section 2 of the Sherman Act, 15 U.S.C. Section 2.

78.     HOG possesses monopoly power over the market for radiation oncology services in Northwest Arkansas. HOG has the power to control prices in that market, and has the ability to exclude rivals in that market.

79.     Significant barriers to entry exist in the market for radiation oncology services in Northwest Arkansas. Entering that market under normal conditions requires significant capital, expertise, and time.

80.     HOG's anticompetitive actions have significantly increased the barriers to entry in the market for radiation oncology services in Northwest Arkansas.

81.     HOG's anticompetitive practices have injured Landmark, patients, and payers.

82.     HOG, through the acts and practices complained of herein has committed, and is committing, a violation of Section 2 of the Sherman Act, 15 U.S.C. Section 2.

## COUNT II
### Attempted Monopolization
### Violation of Section 2 of the Sherman Act

83.     Landmark incorporates its prior allegations as if fully restated herein.

84.     HOG, through the acts and practices complained of, is engaged in an attempt to monopolize the market for radiation oncology services in Northwest Arkansas in violation of Section 2 of the Sherman Act, 15 U.S.C. Section 2.

85.     HOG is committed to a long-term pattern of anticompetitive actions that are designed to put Landmark out of business.

86.     HOG's actions have injured Landmark and have created a dangerous probability that HOG will succeed in driving Landmark out of business.

87.     HOG offers patients radiation oncology services in Northwest Arkansas. A dangerous probability exists that HOG will acquire monopoly power over the market for radiation oncology services in Northwest Arkansas.

88.     HOG, through the acts and practices complained of herein, has committed, and is committing, a violation of Section 2 of the Sherman Act, 15 U.S.C. Section 2.

## COUNT III
### Violation of the Computer Fraud & Abuse Act, 18 U.S.C. Section 1030

89.     Landmark incorporates its prior allegations as if fully restated herein.

90.     The HOG Defendants, either individually or in concert, knowingly and with intent to defraud and/or cause harm, intentionally accessed Landmark's computer system and remote desktop server without authorization and/or exceeded any authorization to access the computer system and remote desktop server of Landmark.

91.     By means of this unauthorized access, or exceeded authorized access, the HOG Defendants furthered their intended fraud, obtaining a value of more than $5,000 and causing damage in excess of $5,000, including but not limited to accessing confidential pricing, purchasing, or other financial data, trade secrets, and by causing harm to the computer systems of Landmark.

92.     The HOG Defendants obtained access to Landmark's computer system and remote desktop server through the use of interstate commerce.

93.     The HOG Defendants conspired to commit or attempt to commit these offenses.

94.     Landmark was forced to retain an attorney to prosecute this action, and is therefore entitled to an award of reasonable attorneys' fees and costs.

95.     Landmark has suffered damage and loss by reason of the HOG Defendants'
violation of 18 U.S.C. Section 1030, including the costs of responding to the HOG
Defendants' offense, conducting a damage assessment, restoring lost data, lost revenue, costs
incurred including attorney and consultant's fees, and other consequential damages.

**COUNT IV**
**Violation of Section 43(a) of the Lanham Act, 15 U.SC. Section 1125(a)(1)**

96.     Landmark incorporates its prior allegations as if fully restated herein.

97.     As set forth above, HOG has made false or misleading statements to the
Arkansas Secretary of State, through its website, and to consumers in Northwest Arkansas
designed to confuse physicians and patients about the separate identities of HOG and
Landmark.

98.     HOG's false and/or misleading statements have the capacity to deceive a
substantial portion of Landmark's intended audience of potential patients, and, upon
information and belief, these statements have actually deceived potential patients and their
physicians.

99.     By publishing its false and misleading statements to the Arkansas Secretary of
State and on its website, HOG has placed the statements in interstate commerce.

100.    Landmark has suffered injury as a result of HOG's false and misleading
statements, both by direct diversion of potential Landmark patients and by a lessening of
goodwill associated with Landmark's reputation in the Northwest Arkansas market.

101.    Landmark continues to be damaged by HOG's efforts to confuse the
marketplace about the separate identities of Landmark and HOG.  Unless HOG's conduct is
enjoined, Landmark and its reputation will suffer irreparable injury that cannot be adequately

calculated or compensated solely by monetary damages and for which there is no adequate remedy at law.

102.    HOG, through the acts and practices complained of herein, has committed, and is committing a violation of 41 U.SC. Section 1125(a)(1).

## COUNT V
### Deceptive and Unconscionable Trade Practices
### Violation of the Arkansas Deceptive Trade Practices Act

103.    Landmark incorporates its prior allegations as if fully restated herein.

104.    The Landmark parties are "persons" entitled to protection under the Arkansas Deceptive Trade Practices Act, *Ark. Code Ann.* Section 4-88-101, *et seq.*

105.    The HOG Defendants, through their employees and owners, have engaged in unconscionable and false deceptive acts and practices of business as described above.

106.    The HOG Defendants knowingly engaged in a scheme and artifice to defraud the Landmark parties, made untrue statements of facts, failed by omission to make factual statements, in light of the circumstances in which they were made, not misleading, and engaged in acts and practices that operated as a fraud and deceit upon the Landmark entities. The actions are unconscionable, false, and deceptive in the practice of business and, thus, they are in violation of Ark. Code Ann. Section 4-88-107.

107.    The HOG Defendants' conduct proximately caused the Landmark parties to suffer actual financial damages as set forth herein, as well as reasonable attorneys' fees and costs of litigation pursuant to Ark. Code Ann. Section 4-88-113(f).

## COUNT VI
### Tortious Interference with a Business Expectancy

108.    Landmark incorporates its prior allegations as if fully restated herein.

109.   Landmark had a valid business expectancy in its efforts to attract and recruit new radiation oncologists or other providers to relocate to Northwest Arkansas to broaden the number of physicians with the specialized knowledge and training to provide cancer treatments in Northwest Arkansas.

110.   In addition, Landmark has a valid business expectancy in its ability to receive referrals from all service providers in the Northwest Arkansas community, including area hospitals.   The HOG Defendants have intentionally attempted to interfere with this by negotiating exclusive or preferred provider relationships with one or more care providers, including most recently the Mercy Hospital system.

111.   The HOG Defendants had knowledge of such expectancies at all relevant times.

112.   The HOG Defendants, while using data and information belonging to Landmark obtained either through improper access to Landmark's computer systems or by false pretenses of a "business discussion," did intentionally and in bad faith interfere in Landmark's efforts to recruit alternative oncology service providers to Northwest Arkansas.

113.   As a direct and proximate result of the foregoing actions, Landmark has been damaged in the amounts set forth in this Third Party Complaint, plus pre-judgment interest, costs, and attorneys' fees.

### COUNT VII
### UNFAIR COMPETITION

114.   Landmark incorporates its prior allegations as if fully restated herein.

115.   The HOG Defendants have intentionally simulated Landmark's name and identity with the purpose of deceiving the public.

116.    The HOG Defendants possessed knowledge at all relevant times that the public and consumers at large identify Landmark by the "Landmark" name and identity.

117.    The HOG Defendants acted with the purpose of confusing and misleading the public and consumers at large by changing the text on its website to direct certain searches to the HOG Defendants rather than Landmark.

118.    The HOG Defendants further acted with the purpose of confusing and misleading the public and consumers at large by acquiring the advertising and search-engine rights to certain searches, including the term Landmark and Northpoint, that would direct certain searches to the HOG Defendants rather than Landmark.

119.    In addition, the HOG Defendants registered "fictitious names" with the Arkansas Secretary of State in an attempt for the purpose of confusing and misleading the public and consumers at large.

120.    As a direct and proximate result of the foregoing actions, Landmark has been damaged in the amounts set forth in this Third Party Complaint, plus pre-judgment interest, costs, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Third-Party Plaintiffs pray that this Honorable Court grant the following relief:

A. Declare that Third-Party Defendant has violated Sections 1 and 2 of the Sherman Act, violated Section 43(a) of the Lanham Act, violated the Computer Fraud & Abuse Act, violated the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. Section 4-88-101 *et seq.*, have tortuously interfered with a business expectancy, and committed a violation of the common law of unfair competition.

B.  Permanently enjoin Third-Party Defendant from (i) continuing their qui tam lawsuit against Third-Party Plaintiffs or any other Defendant, (ii) marketing or holding themselves or their business out as "Landmark" or "Northpoint," and (iii) contracting with third-parties for exclusive or "preferred provider" arrangements to the exclusion of the Landmark Defendants;

C.  Award Third-Party Plaintiffs damages in the form of three times the amount of lost profits that Landmark suffered, or will continue to suffer, as a result of Third-Party Defendant's anticompetitive actions;

D.  Award Third-Party Plaintiffs damages in the form of the lost business expectancy that Landmark was prevented from achieving, or will be prevented from achieving, as a result of Third-Party Defendant's anticompetitive actions;

E.  Award Third-Party Plaintiffs damages in the form of damages measured by the financial loss caused by Third-Party Defendant's violations of the Arkansas Deceptive Trade Practices Act;

F.  Award Third-Party Plaintiffs exemplary or punitive damages;

G.  Award Third-Party Plaintiffs costs and attorneys' fees;

H.  A trial by jury; and

I.  Such other and further relief as the Court deems appropriate and equitable.

Respectfully submitted,

Todd P. Lewis
Ark. Bar No. 96226
CONNER & WINTERS, LLP
4375 N. Vantage Dr., Suite 405
Fayetteville, Arkansas 72703
Tel: (479) 582-5711
Fax: (479) 587-1426
tlewis@cwlaw.com

Stacy L. Brainin*
Texas Bar No. 02863075
Christopher A. Rogers*
Texas Bar No. 24051264
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Tel: (214) 651-5000
Fax: (214) 651-5940
stacy.brainin@haynesboone.com
chris.rogers@haynesboone.com

* Admitted *Pro Hac Vice*

*Attorneys for Defendants*
*TruRadiation Partners Arkansas, LLC;*
*Northpoint Radiation Center GP, LLC;*
*Physicians Radiation Arkansas, LP; and Pro*
*Physicians Arkansas, P.A.*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 21, 2017, the foregoing document was served upon all counsel of record via the Court's electronic filing system in accordance with the Federal Rules of Civil Procedure.

_Todd P. Lewis_
Todd P. Lewis

4811-9937-0067_4